Steven J. Serbalik, Bar #028191
**STEVEN J. SERBALIK, P.L.C.**
4925 E. Desert Cove Ave #116
Scottsdale, Arizona 85254
Telephone: (480) 269-1529
steveserbalik@gmail.com
*Attorney for Plaintiffs Juan Hernandez and the Arizona Conference of Police and Sheriffs, Inc.*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Hernandez, individually and the Arizona Conference of Police and Sheriffs, an Arizona nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Phoenix, a municipal corporation; Jeri Williams, in her official capacity as Chief of Police of the Phoenix Police Department; and Shane Disotell, in his official capacity as the Commander of the Phoenix Police Professional Standards Bureau,<br><br>Defendants. | NO.<br><br>**COMPLAINT AND PETITION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION** |

Plaintiffs Juan Hernandez and the Arizona Conference of Police and Sheriffs ("AZCOPS") (collectively where appropriate the "Plaintiffs") for their Complaint against the City of Phoenix, Jeri Williams and Shane Disotell, (collectively where appropriate the "Defendants") allege as follows:

## JURISDICTIONAL ALLEGATIONS

1.  Jurisdiction is appropriate pursuant to 28 U.S.C. §1331 because Plaintiffs bring this action pursuant to 42 U.S.C. §1983 and the First and Fourteenth Amendments of the United States Constitution. This Court also has supplemental and/or pendent jurisdiction over state constitutional, common law and statutory claims pursuant to 28 U.S.C. §1367.

2.  This Court has jurisdiction of Plaintiffs' federal law claims pursuant to 28

1  U.S.C. §1331 and 42 U.S.C. §1988. Additionally, this Court has jurisdiction over
2  Plaintiffs' state and federal claims pursuant to Article 6, Section 14 of the Arizona
3  Constitution. Plaintiffs seek injunctive relief.

4      3.    Venue is proper in this Court pursuant to A.R.S. §12-401 and 28 U.S.C.
5  §1391 as the parties are residents and entities of Maricopa County and Pima County and
6  the events underlying this lawsuit occurred in Maricopa County, an area wholly within the
7  District of Arizona. All parties are residents of and/or are doing business in Arizona.

## GENERAL ALLEGATIONS

    4.    Plaintiffs reallege and incorporate, by this reference, their claims, facts and allegations in the paragraphs above as if set forth fully herein.

    5.    Defendant City of Phoenix is a governmental entity that acts through its employees, agents and independent contractors, including Defendants Jeri Williams and Shane Disotell.

    6.    Defendant Jeri Williams is the duly-appointed Police Chief of the City of Phoenix and the head of the Phoenix Police Department ("Phoenix PD"), with ultimate authority and responsibility to establish policy, practices, customs, procedures, protocols and training for the Phoenix PD as an official policymaker. Her actions and/or inactions in his official capacity constitute actions of the Phoenix PD and the City of Phoenix is vicariously and directly liable for her wrongful conduct as alleged herein. As the appointed Police Chief, Williams has official, vicarious, direct and supervisory liability for the Phoenix PD's officers, agents and employees.

    7.    Defendant Shane Disotell is the duly-appointed Commander of the City of Phoenix Police Department's Professional Standards Bureau. In this role, he transmits reports and recommendations to Chief Williams and other officials in the City of Phoenix, who rely upon his actions and recommendations in deciding on disciplinary actions and policy interpretations. His actions and/or inactions in his official capacity constitute actions of the City of Phoenix and the City of Phoenix is vicariously and directly liable for his wrongful conduct as alleged herein.

8. Plaintiff AZCOPS is a statewide organization dedicated to fair representation of law enforcement officers located around the State of Arizona. Plaintiff Hernandez is an AZCOPS member, and AZCOPS therefore provides Plaintiff Hernandez with legal representation and incurs costs and fees associated with this representation.

## ALLEGATIONS COMMON TO ALL COUNTS

### Juan Hernandez's Employment with the Phoenix Police Department

9. Plaintiff Juan Hernandez is a Phoenix Police Sergeant and a state-certified peace officer.

10. Since prior to September 30, 2013 through today, Hernandez maintained a Facebook profile.

11. Plaintiff Hernandez's Facebook postings, at all times relevant to this Complaint, were made exclusively in his private, personal capacity.

12. At no time relevant to this Complaint did Plaintiff Hernandez serve as a Phoenix Police or City of Phoenix spokesman.

13. As an employee of the Phoenix Police Department, Plaintiff Hernandez is responsible for obeying any lawful City of Phoenix Administrative Regulations and any lawful Phoenix Police Operations Orders.

14. On or about August 14, 2012, Plaintiff Hernandez posts a news article opening with the sentence "Recent VIOLENCE against peaceful pro-life demonstrators are BURIED by the news media in favor of coverage for Tom Cruise and Katie Homes' divorce." This posting is attached to this Complaint as Exhibit 1, and incorporated as if fully set forth herein.

15. On or about September 12, 2012, Plaintiff Hernandez posts a news article titled "Islamists Drag Dead Body of US Ambassador in the Streets." This posting is attached to this Complaint as Exhibit 2, and incorporated as if fully set forth herein.

16. On or about August 1, 2013, the Phoenix Police Department's Social Media Policy (the "PD policy") goes into effect. The PD policy is attached to this complaint as Exhibit 3, and incorporated as if fully set forth herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17. On September 30, 2013, Plaintiff Hernandez posts a meme, beginning with the statement "The Most Common Name for a Convicted Gang Rapist in England is…Muhammed." This posting is attached to this complaint as Exhibit 4, and incorporated as if fully set forth herein.

18. On October 8, 2013, Plaintiff Hernandez posts a meme titled "You just got to love the Brits." This posting is attached to this complaint as Exhibit 5, and incorporated as if fully set forth herein.

19. On December 24, 2013, Plaintiff Hernandez posts a meme titled "Recent Contributions to Science by Muslims." This posting is attached to this complaint as Exhibit 6, and incorporated as if fully set forth herein.

20. On January 1, 2014, Plaintiff Hernandez posted a news article titled "Real Footage – Cops Shoot Thug in the Head." There appears to have been a picture in the initial posting, but it does not appear in the reposting or in the Phoenix PD's investigation. This posting is attached to this complaint as Exhibit 7, and incorporated as if fully set forth herein.

21. On January 1, 2014, Plaintiff Hernandez posted a news article titled "Congress Throws Veterans Under the Bus for Illegal Immigrants." This posting is attached to this complaint as Exhibit 8, and incorporated as if fully set forth herein.

22. On January 9, 2014, Plaintiff Hernandez posted a news article titled "The End of Christians in the Muslim World." This posting is attached to this complaint as Exhibit 9, and incorporated as if fully set forth herein.

23. On January 9, 2014, Plaintiff Hernandez posted a news article titled "Military Pensions Cut, Muslim Mortgages Paid by US." This posting is attached to this complaint as Exhibit 10, and incorporated as if fully set forth herein.

24. On February 7, 2014, Plaintiff Hernandez posted a news article titled "Young Christian Girl Repeatedly Raped by 15 Muslims Then Murdered." This posting is attached to this complaint as Exhibit 11, and incorporated as if fully set forth herein.

25. On March 27, 2014, Plaintiff Hernandez posted a news article titled "Two

Christians Beheaded in New Jersey by Muslim Man: Media, Silent!" This posting is attached to this complaint as Exhibit 12, and incorporated as if fully set forth herein.

26. On or about June 1, 2019, the Plain View Project releases social media posts made by selected police officers onto a public website – accessible at the time of this complaint at www.plainviewproject.org

27. The Plain View Project's website, at all times relevant to this complaint, includes the following language: "To be clear, our concern is not whether these posts and comments are protected by the First Amendment. Rather, we believe that because fairness, equal treatment, and integrity are essential to the legitimacy of policing, these posts and comments should be part of a national dialogue about police."

28. Exhibits 1-2 and 4-12 were included in the Plain View Project's database published on the Plain View Project website.

29. On or about June 3, 2019, the Phoenix Police Department's Professional Standards Bureau initiated an internal investigation (the "PSB investigation").

30. Upon information and belief, prior to the Plain View Project publication, no member of the Phoenix Police Department had faced significant discipline (suspension, demotion and/or termination) based upon the PD policy as applied to private postings on any social media platforms.

31. Despite the fact that the Facebook posts were online for *years*, prior to the Plain View Project publication, no one from the Phoenix Police Department or the City of Phoenix ever identified Plaintiff Hernandez's postings as alleged violations of any PPD or Phoenix policy.

32. On or about June 5, 2019, Plaintiff Hernandez received a Notice of Investigation alleging that he violated the PPD Social Media Policy.

33. On or about the same date that Plaintiff Hernandez received the Notice of Investigation, he set his Facebook profile to "private" and, fearing potential additional disciplinary action, he ceased reposting any news articles.

34. On or about June 20, 2019, Plaintiff Hernandez was interviewed, as a

condition of his employment, as part of the PSB investigation. A copy of the transcript of the interview is attached to this complaint as Exhibit 13, and incorporated as if fully set forth herein.

35. During his interview, the PSB investigation only focused on four of Plaintiff Hernandez's Facebook posts – those identified in this complaint as Exhibits 4, 5, 6 and 10.

36. During his interview, Plaintiff Hernandez explained that he was simply reposting content that he felt involved matters of public concern.

37. The PSB investigators did not provide any information as to why these particular posts were alleged to have been a violation of the PD policy, when the posts contained in Exhibits 1-2, 7-9, and 11-12 were not.

38. Exhibit 4 includes information that was widely covered in mainstream media discussing shifting demographics (and common male names in the United Kingdom) as demonstrated in Exhibit 14.

39. Exhibit 6 includes information that was widely covered in mainstream media discussing statements issued by certain prominent individuals, as demonstrated in Exhibit 15.

40. Exhibit 10 is a link to an article discussing government spending priorities, a quintessential example of a matter of public concern.

41. For all Facebook posts related to this matter (Exhibits 1-2 and 4-12), Plaintiff Hernandez did not "comment" on or "create" the content at issue. He simply reposted content that he identified as part of ongoing public dialogue on matters that he wanted to discuss further with his friends, family and associates.

42. On August 17, 2019, the Phoenix PD transmitted a "draft investigation" that would sustain Plaintiff Hernandez for violating the PD Policy with a "Class III" disciplinary classification contemplating a suspension of 40, 80, or 240 hours without pay, and/or demotion/termination.

43. After receiving the draft investigation, on or about August 26, 2019, Plaintiff Hernandez, through counsel, advised Defendants that attempting to discipline

Plaintiff Hernandez for discussing matters of public concern has a chilling effect on Plaintiff Hernandez and members Plaintiff AZCOPS, and that proceeding with discipline could result in legal action.

44. On or about September 4, 2019, and "investigative review process" meeting was held with Plaintiff Hernandez and his representatives (who are members of Plaintiff AZCOPS) and Defendant Disotell and other members of the PSB investigation team.

45. Lt. Brian Thatcher, a member of Plaintiff AZCOPS and a union representative of Plaintiff Hernandez, asked pre-prepared questions (attached as Exhibit 16 and incorporated as if fully set forth herein) and subsequently authored a contemporaneous memo documenting the answers received by Defendant Disotell and other members of the PSB investigative team (attached as Exhibit 17 and incorporated as if fully set forth herein).

46. At the investigative review process meeting, Defendant Disotell acknowledged that the discipline contemplated for Plaintiff Hernandez was based exclusively on PD policy, not on the Phoenix Administrative Regulation addressing social media use.

47. Defendant Disotell further stated that the disciplinary finding that Plaintiff Hernandez brought "discredit to the [Phoenix Police] department" used to justify the imposition of discipline was based upon the collective impact of the Plain View Project, and not exclusively on Plaintiff Hernandez's Facebook posts.

48. Defendant Disotell and other PSB personnel present at the investigative review process meeting were not familiar with the implications or balancing tests related to free speech from public employees on matters of public concern.

49. Defendant Disotell and other PSB personnel present at the investigative review process meeting were unable to provide any examples of any situations in which Plaintiff Hernandez acted without "moral integrity" or failed to "work cooperatively, courteously, but firmly with all segments of the public" (quotations from the discipline investigation) other than the Facebook posts that were the focus of the investigation.

50. When asked if the conclusions contained in the PSB investigation were based on individual posts or a broader assessment of the Plain View Project, Defendant Disotell and other PSB representatives present stated that the Plain View Project cases were viewed as a collective and that the determination to discipline and the degree of discipline was based upon the collective impact of all of the posts from all of the impacted employees.

51. On October 2, 2019, Plaintiff Hernandez was notified that a Discipline Review Board would be convened to review the results of the PSB investigation and to make a discipline recommendation to Chief Williams. The Discipline Review Board is set to consider this matter on October 15, 2019

52. The Discipline Review Board is led by an assistant chief, and is also composed of commanders, peers (sergeants) and civilians.

53. The Discipline Review Board reviews the written investigation, is briefed by PSB personnel and union representatives, and is allowed to ask questions of investigators and union representatives.

54. Without this Court's intervention, members of the Discipline Review Board will be instructed that Plaintiff Hernandez's posts are not protected and are the proper basis for discipline.

55. Because the vast majority of PPD Sergeants and Lieutenants are members of Plaintiff AZCOPS, this instruction, as part of an official disciplinary process, would have a further chilling effect on the ability of AZCOPS members to exercise their First Amendment rights to comment on matters of public concern (see, e.g. attached Exhibit 18, Declaration of Lt. Mark Schweikert – incorporated as if fully set forth herein).

**The City's Administrative Regulation**

56. Defendant City of Phoenix instituted Administrative Regulation 2.38 – Social Media and Networking (AR 2.38) – on or about January 12, 2015. A copy of AR 2.38 is attached as Exhibit 19 and incorporated as if fully set forth herein).

57. Unlike the PD policy, AR 2.38 specifically contemplates that "Nothing

contained in this A.R. shall be construed as denying employees their civil or political liberties as guaranteed by the United States and Arizona Constitutions."

58. Upon information and belief, Defendant City of Phoenix intended to revise the PD policy after the implementation of AR 2.38 to ensure it met both Federal and Arizona constitutional concerns, but this revision never took place.

### Damages to Plaintiffs

59. Plaintiff Hernandez suffered and continues to suffer chilling effects on his right to speak regarding matters of public concern.

60. Plaintiff AZCOPS spent thousands of dollars in legal costs and fees to represent Plaintiff Hernandez in an improper internal affairs investigation that does not respect the Federal and Arizona constitutional rights of its members.

61. Plaintiffs fear that, without this Court's intervention, Defendants will continue to inflict harm upon them by wrongfully disciplining Plaintiff Hernandez without respecting his constitutional rights to speak on matters of public concern.

### COUNT I
### 42 U.S.C. §1983 – Violation of Federal Constitutional Rights

62. Plaintiffs reallege each and every allegation set forth in the paragraphs above and incorporate each allegation by this reference.

63. Plaintiff Hernandez has the constitutional right to be free from a deprivation of a protected interest (his right to speak on matters of public concern) without due process of law.

64. The PD policy at issue is unconstitutional on its face, as it is overbroad and has the purpose and effect of chilling otherwise protected speech by public employees on matters of public concern, with no consideration of the balancing test required before a public employer can restrict the speech of a public employee on matters of public concern.

65. The PD policy at issue is unconstitutional on its face, as it is impermissibly vague, and has the purpose and effect of chilling otherwise protected speech by public employees on matters of public concern. Employees reading the policy would have no

discernable standard as to which posts would violate the policy – resulting in a chilling effect far greater than what is permissible under the United States Constitution.

66. The PD policy at issue is unconstitutional as applied, as Defendant's analysis of Plaintiff Hernandez's posts is arbitrary, with no discernable standard as to what posts will be permitted and what could relate in discipline. The arbitrary nature of Defendants' enforcement of the PD policy creates an impermissible chilling effect on Plaintiff Hernandez's participation in speech related to matters of public concern, and also chills the participation of members of Plaintiff AZCOPS.

67. Unless otherwise specified, Defendants were at all material times acting under the color of law and in their capacity as officials and agents of their respective government agencies.

68. Defendant Williams intentionally or recklessly allowed an investigation and proposed discipline action against Plaintiff Hernandez that deprived Plaintiff Hernandez of the ability to contribute to conversations related to matters of public concern.

69. Defendant Disotell intentionally or recklessly allowed an investigation and proposed discipline action against Plaintiff Hernandez that deprived Plaintiff Hernandez of the ability to contribute to conversations related to matters of public concern, and failed to consider or understand the First Amendment and Arizona Constitution Art. 2 §6 right to freedom of speech on matters of public concern.

70. The City of Phoenix intentionally or recklessly permitted an investigation against Plaintiff Hernandez without ensuring that Plaintiff Hernandez received proper protections related to his rights under the United States Constitution.

71. Plaintiffs Hernandez and AZCOPS will face further damages and chilling effects if Defendants are allowed to proceed with a Discipline Review Board and continued enforcement of the PD policy.

72. The lack of a meaningful consideration of the Federal constitutional concerns will cause actual damages to Plaintiffs in the form of time and money that will be expended to defend against a procedurally deficient process and investigative result.

73. Defendants wrongful conduct as referenced in this Complaint constitute violations of the United States Constitution including, but not limited to, Amendments I and XIV, in that Plaintiffs were deprived of privileges and immunities guaranteed to all citizens of the United States by being categorically deprived of their ability to participate in speech related to matters of pubic concern, without proper cause, with an unconstitutional motive and malice, without equal protection and without substantive and procedural due process.

74. Defendants' wrongful conduct both actually and proximately caused damage to Plaintiffs in the form of attorneys fees in an amount to be determined by the Court.

## COUNT II

**Arizona Constitution Art. 2, §6 and A.R.S. §38-1101 *et. seq.***

75. Plaintiffs reallege each and every allegation set forth in the paragraphs above and incorporate each allegation by this reference.

76. Unless otherwise specified, Defendants Williams and Disotell were at all material times acting under the color of law and in their capacity as officials and agents of their respective government agencies.

77. Defendants Williams and Disotell initiated and took part in the internal investigation against Plaintiff Hernandez.

78. The internal investigation against Plaintiff Hernandez failed to consider his right to participate in speech related to matters of public concern, and contained no analysis of the protections contemplated in the Arizona Constitution – particularly Art. 2 §6 – which states – "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

79. The internal investigation against Plaintiff Hernandez seeks to sustain discipline against him based, in part, on speech by others contained in the Plain View Project database – and not exclusively based upon the content and effect of Plaintiff Hernandez's own postings.

80. Plaintiff Hernandez is a nonprobationary sergeant, and is entitled to the processes outlined in the Arizona Peace Officers' Bill of Rights (A.R.S. §38-1101 *et. seq*).

81. Peace officers covered under the Peace Officers' Bill of Rights may not be subject to disciplinary action except for just cause (A.R.S. §38-1103(A).

82. Just cause means the employer informed the law enforcement officer of the possible disciplinary action resulting from the officers conduct…such that the officer should have reasonably known disciplinary action could occur (A.R.S. §38-1101(7)(a)).

83. The disciplinary actions proposed by Defendants against Plaintiff Hernandez range from a 40-hour suspension to possible termination, and are not reasonably related to the seriousness of the alleged "offense" of speaking, in his private capacity, on matters of public concern.

84. Defendants' wrongful conduct both actually and proximately caused damage to Plaintiffs in the form of attorneys fees in an amount to be determined by the Court.

## COUNT III

**42 U.S.C. §1983 and State Law – Unconstitutional and/or Unlawful Customs, Policies and Failure to Train**

85. Plaintiffs reallege each and every allegation set forth in the paragraphs above and incorporate each allegation by this reference.

86. Unless otherwise specified, Defendants Williams and Disotell were at all material times acting under the color of law and in their capacity as officials and agents of their respective government agencies.

87. Defendants Phoenix and Williams failed to train Defendant Disotell in the appropriate, lawful and constitutional policies, procedures and protocols for investigating, processing, handling and managing internal investigations under his control.

88. Defendants Phoenix and Williams provided either no training or such inadequate training that the lack of training was the moving force behind Plaintiffs' injuries.

89. Defendants Phoenix and Williams' failure to train Defendant Disotell amounted to a deliberate indifference to the rights of persons with whom Defendant Disotell came into contact with, including Plaintiff Hernandez.

90. Defendants' wrongful conduct as referenced in this Complaint constitute violations of the United States Constitution and the Constitution and laws of the State of Arizona, including, but not limited to, Amendments I and XIV, and Arizona Art. 2 §6, in that Plaintiffs were deprived of privileges and immunities guaranteed to all citizens of the United States by being subjected to an unlawful investigation, with an unconstitutional motive and malice, without equal protection and without substantive and procedural due process.

91. Defendants' wrongful conduct both actually and proximately caused damage to Plaintiffs in the form of attorneys fees in an amount to be determined by the Court.

## COUNT IV
### Negligence and Gross Negligence

92. Plaintiffs reallege each and every allegation set forth in the paragraphs above and incorporate each allegation by this reference.

93. Unless otherwise specified, Defendants Williams and Disotell were at all material times acting under the color of law and in their capacity as officials and agents of their respective government agencies.

94. Defendants owed a duty to Plaintiff Hernandez to use care to avoid or prevent harm caused by improperly conducting an internal investigation.

95. Defendants owed a duty to Plaintiff Hernandez to consider evidence tending to lessen the likelihood that just cause for discipline existed when conducting an internal investigation.

96. Defendants owed a duty to Plaintiff Hernandez to ensure that his rights to participate in speech in his capacity as a private citizen on matters of public concern were protected before recommending disciplinary action, including potential termination, be

1  pursued.

2  97. Defendants breached their duties by conducting an incompetent and illegal
3  investigation into Plaintiff Hernandez.

4  98. Defendants breached their duties by continuing the illegal investigation after
5  they were advised, in writing, that this investigation had a chilling effect on Plaintiff
6  Hernandez's rights to speak on matters of public concern.

7  99. Defendants breached their duties by recommending discipline based, even in
8  part, on the speech of others (other officers listed in the Plain View Project) and/or on
9  speech that is otherwise protected (i.e. reposting of articles and facts that are the subject of
10 legitimate public concern).

11 100. Defendants' breach both actually and proximately caused damage to
12 Plaintiffs in the form of attorneys fees in an amount to be determined by the Court.

## PETITION FOR A TEMPORARY RESTRAINING ORDER

14 101. Plaintiffs reallege each and every allegation set forth in the paragraphs
15 above and incorporate each allegation by this reference.

16 102. Upon information and belief, Defendants intend to proceed with a
17 Discipline Review Board based upon the allegations against Plaintiff Hernandez on or
18 about Tuesday, October 15th, 2019. The Discipline Review Board members include peers
19 of Plaintiff Hernandez who are members of Plaintiff AZCOPS, and recommending
20 discipline based upon an unconstitutional and illegal process would cause irreparable
21 harm to Plaintiffs.

22 103. The continued enforcement of the PD Policy related to social media has an
23 immediate, continued, and therefore irreparable chilling effect on the rights of Plaintiff
24 AZCOPS' members, and therefore should be immediately enjoined.

25 104. Without an immediate relief, Plaintiffs would incur substantial hardship,
26 including additional costs, the exposure of legal strategies, and a deficient appeal process
27 that would materially harm their protected interests.

28 105. For these reasons, Plaintiffs respectfully request that the Court enjoin

1  Defendants from taking any further adverse actions against Plaintiff Hernandez or any
2  member of Plaintiff AZCOPS until the Court can address the procedural, substantive, and
3  statutory concerns raised in this Complaint, and consider further interim relief after both
4  parties have the opportunity to be heard.

5      106.   Although legal service of this Complaint and Petition is pending,
6  Defendants were provided with actual electronic copies of the Complaint and Petition via
7  email immediately after this document was filed with the Court.

8      107.   Plaintiffs' counsel is available for an immediate hearing regarding
9  Plaintiffs' request for a Temporary Restraining Order at any time after 2pm on Friday,
10 October 11, 2019.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against the Defendants as follows:

(a) For attorneys fees arising from Procedural Due Process violations in an amount to be determined by the Court;

(b) For attorneys fees arising from Substantive Due Process violations in an amount to be determined by the Court;

(c) For attorneys fees arising from violations of state statutory rights in an amount to be determined by the Court;

(d) For attorneys fees arising from Unconstitutional Customs, Policies and Failure to Train in an amount to be determined by the Court;

(e) For attorneys fees arising from Negligence in an amount to be determined by the Court;

(f) For attorneys fees arising from Negligent Hiring, Training and Supervision in an amount to be determined by the Court;

(g) General damages in an amount to be proven at trial, including but not limited to damages to reputation, emotional distress, lost profits, deprivation of constitutional rights, humiliation and attorneys' fees;

(h) Costs and attorneys' fees as may be allowed by law and 42 U.S.C. §1988

(i) Interim and permanent injunctive relief to remedy past violations and to prevent further violations of Plaintiffs' rights; and

(j) Such other and further relief which is just and reasonable.

## NO JURY DEMAND

Plaintiffs request a trial by judge.

RESPECTFULLY SUBMITTED this 10th day of October, 2019.

**STEVEN J SERBALIK, P.L.C.**

By: /s/Steven J. Serbalik
Steven J. Serbalik
4925 E. Desert Cove Ave #116
Scottsdale, Arizona 85254
*Attorney for Plaintiffs Juan Hernandez and the Arizona Conference of Police and Sheriffs, Inc.*