**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Hernandez, et al., | No. CV-19-05365-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

Before the Court is Defendants City of Phoenix, Chief of Police Jeri Williams, and Commander Shane Disotell's (collectively, "Defendants") Motion for Summary Judgment (the "Motion") (Doc. 75). This Motion is fully briefed. (Docs. 78, 79.) The Court also heard oral argument from the parties on the Motion. (Doc. 82.) The Court resolves the Motion as follows.

**I.    BACKGROUND**

Plaintiffs Juan Hernandez and Mark Schweikert are two Phoenix police officers and members of Plaintiff Arizona Conference of Police and Sheriffs ("AZCOPS") (collectively, "Plaintiffs") organization. (Doc. 47-1 at 3.) Plaintiffs allege that the Phoenix Police Department's (the "Department") Social Media Policy (the "Policy") abridges their freedom of speech and violates the due process clause. (*Id.* at 16.) Plaintiffs focus on the following five provisions of the Policy:

> (1) When using social media, Department personnel should be mindful their speech becomes part of the worldwide electronic domain. Therefore, adherence to City and

Department policies is required in the personal use of social media. Employees are prohibited from using social media in a manner that would cause embarrassment to or discredit the Department in any way.

(2) Employees are prohibited from posting on any networking or internet site any photographs, video, or audio recordings taken on Department property and/or in the performance of official duties (including official Department training, activities, or work specific assignments) that are detrimental to the mission and functions of the Department, that undermine respect or public confidence in the Department, could cause embarrassment to the Department or City, discredit the Department or City, or undermine the goals and mission of the Department or City.

(3) Department personnel are free to express themselves as private citizens on social media sites to the degree that their speech does not impair working relationships of this Department, are detrimental to the mission and functions of the Department, that undermine respect or public confidence in the Department, cause embarrassment to the Department or City, discredit the Department or City, or undermine the goals and mission of the Department or City.

(4) Department personnel may not divulge information gained while in the performance of their official duties, make any statements, speeches, appearances, and endorsements where the employee is acting or appearing to act in an official capacity or as an official representative of the Department or City; or publish materials that could reasonably be considered to represent the views or positions of this Department without express authorization.

(5) For safety and security reasons, Department personnel are cautioned not to disclose their employment with this Department. As such, Department personnel are cautioned not to:

- Display Department logos, uniforms, or similar identifying items on personal web pages.

> • Post personal photographs or provide similar means of personal recognition that may cause them to be identified as an employee of this Department.

(Doc. 47-1 at 10–11; Doc. 47-3 at 10–11.)

The City has charged Hernandez with violating the Policy and he is, therefore, subject to discipline. (Doc. 36 at 3–5.) The alleged violations stem from four Facebook posts from 2013 and 2014 that came to the Department's attention, in 2019, when the Plain View Project, a non-party organization that maintains a database of police officer's social media posts, publicized them along with others. (*Id.* at 4; Doc. 47-1 at 5 (quotations omitted).) The four posts for which Hernandez faces discipline are summarized as follows:

> (1) September 30, 2013: A meme with what appears to be mugshots of men of Middle Eastern descent and containing the text "THE MOST COMMON NAME FOR A CONVICTED GANG RAPIST IN ENGLAND IS . . . Muhammad Note to the British media – these gangs are not comprised of 'Asians'; they are Muslims."
>
> (2) October 8, 2013: A meme entitled "You just got to love the Brits" recounting a story in which a Muslim taxi passenger asked the driver to turn off the music in the car for religious reasons, to which the driver responded "[i]n the time of the prophet, there were no taxis, so piss-off and wait for a camel!"
>
> (3) December 24, 2013: A meme entitled "RECENT CONTRIBUTIONS TO SCIENCE BY ISLAM" in which Muslim scholars and theologians expressed controversial opinions regarding female drivers, DNA testing in rape cases, the Earth revolving around the Sun, and the link between dressing modestly and earthquakes.
>
> (4) January 9, 2014: Article entitled "Military Pensions Cut, Muslim Mortgages Paid By US!"

(Doc. 36 at 2–3.)

The release of Hernandez and other officers' social media posts led to negative media attention. (Doc. 48-1 at 3 (collecting stories).) The Department's Professional Standards Bureau soon after launched an investigation under the direction of Commander Disotell. (*Id.*) When questioned by an investigator, Hernandez explained that his posts were intended to "encourage discussion about assimilation" and "drive discussion." (*Id.* at 4–7.) The investigation concluded that Hernandez's posts violated the Policy for, among other reasons, attracting "overwhelming media coverage," causing "major reputation damage" to the Department, and encouraging the spread of "fear and hatred towards people of Middle Eastern descent, as well as those practicing the Muslim faith." (*Id.* at 9.) The investigation report recommended referring Hernandez to the Department's Disciplinary Review Board. (*Id.* at 10.)

Before his disciplinary hearing could take place, Hernandez and AZCOPS filed a complaint and a Motion for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction. (Docs. 1, 2.) The Court denied Plaintiffs' request for preliminary injunctive relief and later granted in part Defendants' motion to dismiss. (Docs. 36, 68.) Two claims survived—unconstitutional vagueness and municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Doc. 68 at 21.) After the parties conducted discovery, Defendants filed the instant Motion to dispose of the remaining claims. (Doc. 75.)

## II.   LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence

of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (holding that the court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

Defendants maintain that the Policy is sufficiently detailed to survive a vagueness challenge. (Doc. 75 at 1–3.) To support that argument, they note that this noncriminal policy is owed deference and does not come close to chilling a substantial amount of constitutionally protected speech. (*Id.* at 3–14.) They argue that the *Monell* claim fails because it is not a stand-alone claim that can exist without an underlying constitutional violation. (*Id.* at 16–17.) Plaintiffs respond by contending there is an issue of material fact as to whether a person of ordinary intelligence can determine what conduct or speech the Policy prohibits. (Doc. 78 at 2.) To further this argument, Plaintiffs primarily point to deposition testimony to prove that the Policy is unconstitutionally vague. (*Id.* at 3–10.)

### A. Vagueness Challenge

The prohibition against vague laws is rooted in the Due Process Clause of the Fifth and Fourteenth Amendments. *See United States v. Williams*, 553 U.S. 285, 304 (2008); *see also* Carissa Byrne Hessick, *Vagueness Principles*, 48 Ariz. St. L.J. 1137, 1140–41 (2016) (discussing the intersection of insufficiently precise language and the due process clauses). Whether a policy or law is void for vagueness is a "pure question of law." *Dimaya v. Lynch*, 803 F.3d 1110, 1112 (9th Cir. 2015). A statute, or here a policy, can be impermissibly vague for either of two independent reasons. "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory

enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). In the public employment context, policies "are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge." *See San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (citing *Arnett v. Kennedy*, 416 U.S. 134, 159 (1974)). Policies that are insufficiently clear pose three problems: (1) they punish people "for behavior that they could not have known was [prohibited]"; (2) they lead to "subjective enforcement of the [policy]"; and (3) they create a "chilling effect on the exercise of First Amendment freedoms." *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009) (citation omitted).

Vagueness challenges can be either a facial challenge or an as applied challenge. *See ArchitectureArt, LLC v. City of San Diego*, 231 F. Supp. 3d 828, 840 (S.D. Cal. 2017), *aff'd*, 745 F. App'x 37 (9th Cir. 2018). Here, the parties agree that only a facial challenge remains. Given that Hernandez's claims were previously dismissed, the parties agree that the remaining Plaintiffs—AZCOPS and Schweikert—bring the facial challenge. (Doc. 68 at 13.) Even if Hernandez was able to bring a vagueness challenge, his Facebook posts preclude a successful claim because, "to raise a vagueness argument, Plaintiffs' conduct must not be 'clearly' prohibited by the [policy] at issue." *Hunt v. Los Angeles*, 638 F.3d 703, 710 (9th Cir. 2011).

"[A] party challenging the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment must demonstrate that 'the enactment is impermissibly vague in all of its applications.'" *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003) (citation omitted). "The touchstone of a facial vagueness challenge in the First Amendment context, however, is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001) (emphasis in original). Put differently, a policy is not vague in the First Amendment context, so long as it is clear what the policy proscribes "in the vast

majority of its intended applications." *Id.* at 1151. The parties agree that this challenge is brought in the First Amendment context. (*See* Doc. 75 at 2; Doc. 78 at 11.) Thus, the "more relaxed" vagueness test applies. *Humanitarian Law Project*, 578 F.3d at 1146 (citation omitted). "Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998).

As a threshold matter, the parties disagree on what level of deference is due. (*See* Doc. 75 at 3–9; Doc. 78 at 10–11.) When, as here, an enactment does not impose criminal penalties, due process tolerates less specificity than it would from a criminal statute. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982). Even though less deference may be appropriate in other First Amendment contexts, those concerns are not weighty here because this Court has already dismissed Plaintiffs' First Amendment claims. (*See* Doc. 68.) The Court is also persuaded with Defendants' argument that deference is owed because this social media policy operates in the law enforcement context. *See, e.g.*, *Aguilera v. Baca*, 510 F.3d 1161, 1171 (9th Cir. 2007). The Court therefore finds that the Department's Policy is owed some deference in evaluating the vagueness challenge. *See Brown v. Bd. of Educ. of City of Chicago*, 84 F. Supp. 3d 784, 791 (N.D. Ill. 2015), *aff'd sub nom.*, *Brown v. Chicago Bd. of Educ.*, 824 F.3d 713 (7th Cir. 2016).

Plaintiffs point to several deposition excerpts and their own hypotheticals to show that the Policy "is not easily discernable by people of ordinary intelligence and it is particularly vulnerable to arbitrary and discriminatory enforcement." (Doc. 78 at 3–9.) But circumstances where deponents randomly provide equivocal responses to hypotheticals concerning the Policy's potential application does not aid Plaintiffs' due process claim. *See Hill*, 530 U.S. at 733 ("[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'") (citation omitted); *Am. Ass'n of People with Disabilities v. Herrera*, No. CIV 08-0702 JB/WDS,

2010 WL 3834049, at *10–12 (D.N.M. July 28, 2010). Plaintiffs' argument that supporting certain politicians or views on controversial subjects might violate the Policy now, or at some point in the unknown future, illustrates why facial challenges are disfavored. For example, Plaintiffs' hypotheticals rest on speculative events and reactions. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008). Consequently, they raise the risk of "premature interpretation of [policies] on the basis of factually barebones records." *Sabri v. United States*, 541 U.S. 600, 609 (2004). These arguments ultimately fail to explain how the Policy would apply in these one-off situations compared to "the vast majority of its intended applications." *Cal. Teachers Ass'n*, 271 F.3d at 1151.

The Court acknowledges that the Policy is not a perfect model of clarity. But, as Defendants note, that is not the constitutional test for vagueness. There has been very little, or no evidence, showing that any other officers have been impacted by the Policy. Indeed, as Defendants note, there is "no empirical evidence of any decrease in the volume of social media posts" following the Plain View Project's disclosure. (Doc. 79 at 10.) Plaintiffs admit that they did not become "readily apparent that the Policy, in its current construction, is unconstitutionally vague" until Hernandez was disciplined. (Doc. 78 at 9.) The Policy existed for nearly six years without issue until it was enforced against Hernandez. Looking to the Policy's text, the Court is not convinced that Plaintiffs have shown that this Policy would chill a substantial amount of protected speech or that it is not clear what the Policy proscribes in the vast majority of its intended applications.[1]

Nor have Plaintiffs shown that the Policy did not provide adequate notice or is, or could be, applied in an arbitrary and discriminatory way. *See Grayned v. City of*

---

[1] This Court's prior rulings also support a finding that Plaintiffs' vagueness challenge cannot succeed. For example, the Court dismissed Plaintiffs' First Amendment overbreadth claim, which requires essentially the same analysis as a facial vagueness challenge. (Doc. 68 at 15–18.) Courts have found where a plaintiff cannot show an overbreadth challenge, the vagueness claim fails for the "same reasons." *See, e.g.*, *Sibley v. Watches*, --- F. Supp. 3d ---, 2020 WL 6721467, at *12 (W.D.N.Y. 2020). The Court also found that the Policy at issue is subject to a limiting instruction, (Doc. 36 at 20), which cuts against Plaintiffs' vagueness challenge. *See Cal. Teachers Ass'n*, 271 F.3d at 1151.

*Rockford*, 408 U.S. 104, 108–09 (1972). Plaintiffs again try to bolster this argument by pointing to deponents' answers to hypothetical situations. (Doc. 78 at 3–9.) But, like before, this strategy is not persuasive. Defendants identify multiple judicial decisions that deal with "similar or arguably more ambiguous provisions" that were held constitutional. (Doc. 79 at 8–9 (citing *Hill*, 530 U.S. at 732–33; *Arnett*, 416 U.S. at 158; *Cal. Teachers Ass'n*, 271 F.3d at 1153–54).)[2]

The Policy's plain language is such that an ordinary officer should understand what conduct might reasonably put them at risk of discharge or punishment. To mitigate any ambiguity, safeguards and administrative vehicles exist to provide clarity.[3] *See Humanitarian Law Project*, 578 F.3d at 1147 ("Should uncertainty lurk that is not purely hypothetical, however, administrative vehicles are available for clarification."). Without more, Plaintiffs cannot show that the Policy's challenged provisions are unconstitutionally vague. Summary judgment will be entered in Defendants' favor on this claim.

### B.  Municipal Liability

To state a claim for municipal liability under 42 U.S.C. § 1983, a plaintiff must allege, among other things, a "constitutional violation." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). As analyzed above, Plaintiffs cannot show that the Policy is unconstitutionally vague. Given that a *Monell* claim is not a stand-alone cause of action, but a method of imputing liability to a municipality for a constitutional violation,

---

[2] Through independent research, the Court has found several additional cases in the employment context that find similar or arguably more ambiguous provisions withstand a due process vagueness challenge. *See, e.g.*, *Kannisto v. City & Cnty. of San Francisco*, 541 F.2d 841, 842–45 (9th Cir. 1976) (finding that a police regulation stating that any conduct "which tends to subvert the good order, . . . which reflects discredit upon the Department . . . or that is prejudicial to the efficiency and discipline of the Department" was not vague); *Greer v. Amesqua*, 212 F.3d 358, 369 (7th Cir. 2000) (noting that it is constitutionally permissible for the government to require that its employees not "be rude"); *Bensfield v. Vill. of Riverside*, No. 14 C 5329, 2015 WL 1887845, at *1–3 (N.D. Ill. Apr. 23, 2015) (finding no vagueness issue with a fire department's code, which states in relevant part that members must conduct themselves "positively," cannot "bring discredit or reflect upon the department," and shall not engage in conduct "which might adversely affect the morale or efficiency" of the department).

[3] For example, the Department "circulated multiple drafts" of the Policy to associations for review and comment. (Doc. 75 at 12–13.) Defendants also noted at oral argument that the Policy is susceptible to a stakeholder-led revision process.

summary judgment will be awarded to Defendants on the *Monell* claim (Count III). *See Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158–59 (9th Cir. 2014).

## IV. CONCLUSION

Plaintiffs' facial challenge fails because they have not proven that the Policy chills a substantial amount of constitutionally protected speech or shown that it is unclear what the Policy proscribes in the vast majority of its intended applications. *See Cal. Teachers Ass'n*, 271 F.3d at 1152. Accordingly,

**IT IS ORDERED** granting Defendants' Motion for Summary Judgment. (Doc. 75.) The Clerk of the Court shall enter judgment in Defendants' favor on Plaintiffs' remaining claims for vagueness (Count I) and municipal liability (Count III), and close this case.

Dated this 26th day of May, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge